UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Rashida Ali, Niquela Cole, Kevin Collins, Gary Norman, Lashawnda Renfroe, and Lisa Torry, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 17 CV 02688 |
| v. | ) ) ) | Judge Edmond E. Chang |
| Vehi-Ship, LLC, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Who decides the question of who decides? That cryptic question is central to this case, where the parties dispute whether the case must be arbitrated instead of litigated in federal court. The Plaintiffs sue their former employer, Vehi-Ship, for failing to pay minimum wage and overtime in an alleged violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* and the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.*, and for deducting expenses from their wages in alleged violation of the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.*[1] R. 6, First Am. Compl.[2] Because those statutes only protect *employees*, the Plaintiffs ultimately must prove that they really were employees rather than independent contractors. But each contract that the Plaintiffs had with Vehi-Ship says they were independent contractors. And the form contract has an arbitration clause. Wanting

---

[1]There is subject matter jurisdiction over the FLSA claim under 28 U.S.C. § 1331, and supplemental jurisdiction over the Plaintiffs' state law claims under 28 U.S.C. § 1367.

[2]Citation to the docket is "R." followed by the entry number and, when necessary, the relevant page or paragraph number.

to enforce the arbitration clause, Vehi-Ship moves to dismiss the complaint for improper venue under Federal Rule of Civil Procedure 12(b)(3). R. 19, Def.'s Mot. to Dismiss. The Plaintiffs say the arbitration clause is unenforceable and, in any event, inapplicable to their statutory claims.

Today's question is narrow: is it the court or an arbitrator who should decide the validity and scope of the parties' arbitration agreement in this case? For the reasons that follow, the Court concludes that it is a question for the arbitrator.

## I. Background

Because this is a motion to dismiss under Rule 12(b)(3), the usual rule applies: all well-pleaded facts in the complaint are accepted as true. *Marzano v. Proficio Mortg. Ventures, LLC*, 942 F. Supp. 2d 781, 787 (N.D. Ill. 2013). Vehi-Ship, as its name suggests, is in the business of moving cars. First Am. Compl. ¶ 16. The Plaintiffs are former Vehi-Ship drivers; their job was to drive Vehi-Ship customers' cars to and from requested destinations. *Id.* ¶ 18. From day one on the job, Vehi-Ship had each Plaintiff sign an "Independent Contractor Operating Agreement." *Id.* ¶ 19. Vehi-Ship told them to "sign the contact on the spot or they would not be permitted to start work." *Id.* Each did as they were told. Def.'s Mot. to Dismiss ¶ 2.

Although Vehi-Ship's website says its drivers are at the "core" of its business, the Plaintiffs say they were relegated to the periphery. First Am. Compl. ¶ 38. They allege a catalogue of unfair employment practices that took place during their time as Vehi-Ship drivers, starting with Vehi-Ship "intentionally misclassif[ying]" them

as independent contractors when they were really employees.[3] *Id.* ¶ 2. The dollars-and-cents impact is that the Plaintiffs say they were paid too little: they allege Vehi-Ship did not pay the minimum wage and overtime that employees are entitled to under federal and state labor laws. *Id.*

For now, Vehi-Ship's response is that the Plaintiffs have come to the wrong forum and so the complaint should be dismissed for improper venue under Rule 12(b)(3). Def.'s Mot. to Dismiss ¶ 10. Vehi-Ship points to arbitration and choice-of-venue clauses in the Agreement. *Id.* ¶ 3. In relevant part, the arbitration clause says that disputes arising out of the Agreement are subject to arbitration under the rules of the American Arbitration Association:

> 9.3  Arbitration. The parties herein agree that any claim, dispute or controversy *arising out of*, effecting, interpreting or purporting to enforce this Agreement, or any matter in which the breach of this Agreement is alleged, or the enforcement of any legal or equitable right that allegedly arising out of or because of this Agreement, shall be resolved on an individual basis and not as part of any class action exclusively between Contractor and Company by submitting the dispute to binding and final arbitration to be conducted in Dallas County, Texas pursuant to the *Commercial Arbitration rules and procedure as set forth under American Arbitration Association* ("AAA") ... .

R. 19-1, Def.'s Mot. to Dismiss, Exh. A, Agreement ¶ 9.3 (emphases added). And the choice-of-law and venue clause says:

---

[3]In relevant part, the independent-contractor clause reads:

Independent Contractor Recitations. This Agreement between Contractor and Company does not constitute an employment agreement. Contractor is an independent contractor with respect to the transportation operations conducted on behalf of Company at all times during the period this Agreement is in effect. Neither Contractor nor its employees are to be considered employees of Company at any time... .

R. 19-2, Def.'s Mot. to Dismiss, Exh. B ¶ 1.2.

3

> 9.4 Choice of Law and Venue. This Agreement shall be governed, construed, and interpreted by the laws of the State of Texas. Venue for any dispute between the parties shall be in arbitration in Dallas County, Texas. THE PARTIES EXPRESSLY AGREE THEY HAVE, BY EXECUTING THIS AGREEMENT, WAIVED THEIR RIGHTS TO FILE SUIT OR SEEK RELIEF IN ANY STATE COURT, FEDERAL COURT, OR COURT OF A FOREIGN NATION AND SHALL NOT JOIN AS A PLAINTIFF IN ANY CLASS ACTION, OR SIMULAR PROCEDURE, ARISING FROM, OR RELATING TO, THIS AGREEMENT.

Def.'s Mot. to Dismiss, Exh. A, Agreement ¶ 9.4 (capitals in original). The Plaintiffs have two responses to these clauses. First, they argue that the clauses are unenforceable because they purport to waive their right to collective action in violation of the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151, *et seq*. R. 20, Pls.' Resp. Br. at 4. Second, they argue that even if the arbitration clause survives NLRA scrutiny, it does not apply because statutory wage claims are beyond its scope. *Id.* at 8.

## II. Analysis

Under the Federal Arbitration Act (FAA), a written agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA was intended to respect parties' agreements to arbitrate and "put arbitration on a par with other contracts and eliminate any vestige of old rules disfavoring arbitration." *Stone v. Doerge*, 328 F.3d 343, 345 (7th Cir. 2003). If contracting parties have a valid arbitration agreement and if the asserted claims in a lawsuit are within its scope—and those are the big ifs here—then arbitration must be enforced. 9 U.S.C. §§ 3-4; *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004). Where an arbitration clause requires arbitration outside a federal court's district—like the

4

one here does, in Texas—a motion to dismiss for improper venue under Rule 12(b)(3) is the proper procedural vehicle to enforce arbitration. *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 808 (7th Cir. 2011).

### A. Questions of Arbitrability

Arbitration is required when (1) there is a valid written agreement to arbitrate; and (2) the asserted claims fall within the scope of the arbitration agreement. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). The Plaintiffs dispute both: they argue that the Agreement's arbitration clause is invalid and, in any event, does not cover their statutory claims. Pls.' Resp. Br. at 4, 8. In response, Vehi-Ship argues that the Plaintiffs' invalidity path is blocked by the Agreement's Independent Contractor clause. R. 21, Def.'s Reply Br. at 5. That clause, Vehi-Ship's argument goes, cuts the Plaintiffs off at the pass because it means that the federal and state statutes invoked by the Plaintiffs do not protect them, because they are not employees. *Id.* at 7-8. A contrary determination that the Plaintiffs were actually employees would not only "effect" the Agreement (one of the words used in the arbitration clause, Def.'s Mot. to Dismiss, Exh. A, Agreement ¶ 9.3, but "essentially invalidate" it. Def.'s Reply Br. at 6. Vehi-Ship thus concludes that the arbitration clause applies because this is a dispute "effecting" and "interpreting" the Agreement. *Id.* at 10.

Ultimately, Vehi-Ship has the better of the argument to the "perennial question" of the "division of labor between courts and arbitrators," *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 741 (7th Cir. 2010)—but for a different reason

5

than proffered by Vehi-Ship. It is for the arbitrator to decide who decides the Plaintiffs' invalidity and scope arguments *not* because these arguments "effect" the Agreement,[4] but because, as is explained below, the parties committed threshold questions of arbitrability to arbitration.

Usually, it is for courts to decide "gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 300 (2010) ("[O]ur precedents hold that courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue."). In other words, questions of arbitrability are generally for courts to decide. *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 649 (1986). But the general rule is displaced when there is "clea[r] and unmistakabl[e] evidence" that the parties agreed to arbitrate arbitrability. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (quoting *AT&T Techs.*, 475 U.S. at 649). Gateway arbitrability issues can be committed to an arbitrator through a delegation clause. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68

---

[4]Vehi-Ship seems to read "effect" as if it means the same as "affect." But to effect an agreement is not the same as to have an effect on it. The ordinary meaning of "effect" as used in the arbitration clause is that the clause covers claims and disputes that "bring about [the Agreement]" or "make [the Agreement] happen." *Effect*, BLACK'S LAW DICTIONARY (10th ed. 2014).

(2010). A delegation clause is simply an "additional, antecedent agreement" to arbitrate threshold issues. *Id.* at 69.

Here, the arbitration clause in the Independent Contractor Agreement incorporates by reference the Commercial Arbitration Rules of the American Arbitration Association. Def.'s Mot. to Dismiss, Exh. A, Agreement ¶ 9.3. Rule 7(a) of the AAA Rules empowers an arbitrator to decide the gateway arbitrability issues of validity and scope of the arbitration clause.[5] It says:

> R-7 Jurisdiction
>
> (a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

The "consensus view" of federal case law is that the incorporation by reference of the AAA Rules is clear and unmistakable evidence of an intention to arbitrate arbitrability. *Allscripts Healthcare, LLC v. Etransmedia Tech., Inc.*, 188 F. Supp. 3d 696, 701 (N.D. Ill. 2016). Although the Seventh Circuit has not specifically addressed whether a delegation clause can be incorporated by reference, it long ago held that an "agreement of the parties to have any arbitration governed by the rules of the AAA incorporate[s] those rules into the agreement." *Commonwealth Edison Co. v. Gulf Oil Corp.*, 541 F.2d 1263, 1272 (7th Cir. 1976). There is unanimity across

---

[5]AAA, Commercial Arbitration Rules R-7(a) (2007), online at https://www.adr.org/sites/default/files/Commercial%20Rules.pdf (as visited October 20, 2017). This Court takes judicial notice of the AAA Rules under Fed. R. Evid. 201. *See Robbins v. B & B Lines, Inc.*, 830 F.2d 648, 651 n.6 (7th Cir. 1987).

all other Circuits that have considered this question: they all hold that incorporating the AAA Rules is clear and unmistakable evidence of an intention to arbitrate threshold arbitrability issues.[6] Several courts in this District have adopted this "consensus view."[7] So have courts in Texas, which the parties chose as the Agreement's governing choice of law. *See Schlumberger Tech. Corp. v. Baker Hughes Inc.*, 355 S.W.3d 791, 802 (Tex. App. Ct. 2011) ("[T]he express incorporation of rules that empower the arbitrator to determine arbitrability—such as the AAA Commercial Arbitration Rules—has been held to be clear and unmistakable evidence of the parties' intent to allow the arbitrator to decide such issues.").

Rule 7(a) of the AAA Rules could not be clearer about the power of the arbitrator to decide gateway arbitrability issues. If the Rule's text were written into the Agreement's arbitration clause itself, this would be an easy case. *See Rent-A-Center,* 561 U.S. at 66 (enforcing a delegation clause that conferred power on an arbitrator to resolve "any dispute relating to the interpretation, applicability, enforceability or formation" of a contract). For today's narrow purpose of deciding

---

[6]*Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 211 (2d Cir. 2005); *Petrofac, Inc. v. Dyn McDermott Petrol. Ops. Co.*, 687 F.3d 671, 675 (5th Cir. 2012); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *Fadal Machining Cents., LLC v. Compumachine, Inc.*, 461 F. App'x 630, 632 (9th Cir. 2011); *Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006). *See also Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 473 (1st Cir. 1989) (holding that an agreement delegated questions of arbitrability to the arbitrator because it incorporated the International Chamber of Commerce Rules of Arbitration, which include a provision similar to AAA Rule 7(a)).

[7]*Allscripts Healthcare, LLC v. Etransmedia Tech., Inc.*, 188 F. Supp. 3d 696, 701 (N.D. Ill. 2016); *Cequent Performance Prods. v. Let's Go Aero, Inc.,* 2016 WL 4036754, at *25 (N.D. Ill. July 28, 2016); *Wal-Mart Stores, Inc. v. Helferich Patent Licensing, LLC*, 51 F. Supp. 3d 713, 719-20 (N.D. Ill. 2014); *Corrigan v. Domestic Linen Supply Co.,* 2012 WL 2977262, at *6 (N.D. Ill. July 20, 2012); *Yellow Cab Affiliation, Inc. v. N.H. Ins. Co.*, 2011 WL 307617, at *14 (N.D. Ill. Jan. 28, 2011).

8

who decides arbitrability, it does not matter that the Rule was incorporated by reference and not spelled out in the arbitration clause itself. The parties still manifested an intention to be bound by the AAA Rules, and those Rules include an undoubtedly broad delegation of power to the arbitrator. *Id.* at 70 n. 1 (noting that the "clear and unmistakable" requirement "pertains to the parties' *manifestation of intent*, not the agreement's *validity*."). Because the AAA Rules were incorporated by reference into the Agreement, the parties intended to arbitrate gateway arbitrability issues.

## B. Validity of the Arbitration Clause

The incorporation of the AAA Rules means that the Plaintiffs' arguments about the validity of the arbitration clause (and, to the extent they are made, to the Agreement as a whole) must be made to the arbitrator.[8] *See Rent-A-Center*, 561 U.S. at 72. This does not foreclose the Plaintiffs' arguments about the clause's validity; it simply "assign[s] the responsibility for evaluating them to [the] arbitrator." *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 744 (7th Cir. 2010).

The Plaintiffs rely on *Lewis v. Epic Systems Corp.*, 823 F.3d 1147 (7th Cir. 2016), as opening a path straight to court, bypassing the Agreement's arbitration clause. *See* Pls.' Resp. Br. at 1, 4-7. In *Lewis*, the Seventh Circuit held that an arbitration clause that "prohibits any collective, representative, or class legal

---

[8]It might have been different if the Plaintiffs challenged the validity of the delegation clause. Challenging the validity of an arbitration agreement is not the same as challenging the validity of a delegation clause in that arbitration agreement. *See Rent-A-Center*, 561 U.S. at 71-72. Because the Plaintiffs only do the first, the delegation clause must be treated as valid and enforceable. *Id.* at 72. *See also Mercadante v. XE Servs.*, LLC, 78 F. Supp. 3d 131, 137 (D.D.C. 2015).

9

proceeding" is invalid because it violates Section 7 of the NLRA. 823 F.3d at 1155. The opinion's reasoning went like this: (1) Section 7 of the NLRA protects, among other employee rights, a right to engage in "other concerted activities for the purpose of collective bargaining or other mutual aid or protection, *id.* at 1151; (2) a contract that purports to restrict an employee's Section 7 rights is unenforceable, *id.* at 1152; (3) "other concerted activities" includes "resort to representative, joint, collective, or class legal remedies," *id.* at 1153; (4) the parties' arbitration agreement precluded any form of class or collective action, *id.* at 1155; (5) "[b]ecause it precludes employees from seeking any class, collective, or representative remedies," the arbitration provision violated the NLRA and was unenforceable, *id.* at 1161. The Plaintiffs say they are in the same position as the *Lewis* employees, and so their arbitration clause should suffer the same fate.[9] Pls.' Resp. Br. at 7.

For two reasons, *Lewis* does not invalidate the Agreement's arbitration clause. The first is that the Plaintiffs are not in the same position as the *Lewis* employees. In *Lewis*, there was no debate that the plaintiffs were *employees*, and so there was no debate that the NLRA applied. Here, however, the Plaintiffs' case turns on the disputed question of employee (or not) status. That question, in turn, may be for an arbitrator to answer if it falls within the scope of the Agreement's arbitration clause. The incorporation of the AAA Rules commits that type of question to arbitration. The second reason is that even if *Lewis* applied, it would not

---

[9]Because *Lewis* is moored to *federal* employment statutes, presumably it would not bar arbitration—even compulsory individual arbitration—of the Plaintiffs' state-law employment claims. The Plaintiffs do not suggest any equivalent bar to arbitration grounded in Illinois law.

necessarily mean the *entire* arbitration clause would be struck from the Agreement. Unlike *Lewis*, the Agreement's savings clause, Def.'s Mot. to Dismiss, Exh. A, Agreement ¶ 9.5, could save enough of the arbitration clause to still require arbitration.

Indeed, the Plaintiffs' extensive reliance on *Lewis* presumes they are entitled to the raft of statutory protections that comes with employment. At first take, the Plaintiffs' argument has a *Lewis* ring to it: the arbitration clause is "illegal and unenforceable" because "Vehi-Ship acted unlawfully in attempting to contract with the Plaintiffs to waive their substantive Section 7 rights in violation of the NLRA." Pls.' Resp. Br. at 7. But the argument skips a step: are these Plaintiffs even covered by the NLRA? The collective-action waiver scrutinized in *Lewis* was unenforceable because it stymied NLRA-protected concerted activities. 823 F.3d at 1155. There was no debate that those plaintiffs were employees. *Id.* at 1151. The NLRA undoubtedly applied. Here, the Plaintiffs signed contracts that acknowledged their status as independent contractors, *not* employees. First Am. Comp. ¶ 16. Independent contractors are generally outside the protective reach of federal employment statutes. 29 U.S.C. § 153(3) (definition of "employee" under the NLRA); 29 U.S.C. § 203(e)(1) (same under the FLSA).

To be sure, the Plaintiffs say that the Agreement's independent-contractor clause mischaracterized the actual facts underlying the employment relationship. First Am. Compl. ¶ 18. And they might be right: they might have been employees despite the independent-contractor label. *See Rutherford Food Corp. v. McComb*,

11

331 U.S. 722, 729 (1947). But until it is decided that the Plaintiffs were actually employees, simply citing *Lewis* does not help. *See Olivares v. Uber Techs., Inc.*, 2017 WL 3008278, at *9 (N.D. Ill. July 14, 2017) (holding that the "threshold issue" of employment status must be decided before a plaintiff can raise a *Lewis* unenforceability argument).[10]

To decide whether the Agreement's arbitration clause falls on the wrong side of *Lewis*, it must first be decided whether the Plaintiffs were employees or independent contractors. But, to return to the question posed at the very beginning of this Opinion, who decides? That depends on whether the dispute about the Plaintiffs' relationship with Vehi-Ship falls within the scope of the arbitration clause. To be sure, the clause could have been more specific about its coverage of disputes arising out of the parties' relationship or employment status. *See, e.g., Olivares*, 2017 WL 3008278 at *3 (noting that the independent contractor agreement between Uber and its drivers applied to "any disputes arising out of or related to [the drivers'] relationship with Uber."). The clause does, however, cover "any claim, dispute or controversy arising out of ... this Agreement." *Id.* at *2. That language is "broad." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967). Indeed, even though the Plaintiffs disavow that they are *enforcing* the Agreement, the relationship between the parties did *arise* out of the Agreement. And the entrenched presumption in favor of arbitration would bolster the clause's

---

[10]It does not matter that a threshold determination of the Plaintiffs' employment status, made for the purposes of deciding arbitrability, would domino into the Plaintiffs' substantive case. *See Indep. Lift Truck Builders Union v. Hyster Co.*, 2 F.3d 233, 236 (7th Cir. 1993) (holding that it is permissible, if need be, to rule on the merits when deciding an arbitrability issue).

reach. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."). But it is not for the Court to cross this interpretive bridge. The incorporation of the AAA Rules commits all disputes about the scope of the arbitration clause to arbitration. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) ("[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability', such as … whether their [arbitration] agreement covers a particular controversy."); *see also Conway ex rel. Conway v. Done Rite Recovery Servs.*, 2015 WL 1989665, at \*15 (N.D. Ill. Apr. 30, 2015) (holding that the effect of a delegation clause was that the plaintiff's argument that his claims fell outside an arbitration clause had to be resolved by the arbitrator). The arbitrator must decide whether a dispute about the parties' work relationship falls within the scope of the arbitration clause.

Even if the Plaintiffs were employees, were entitled to NLRA protection, and were in the same position as the *Lewis* plaintiffs, they would still not be able to make a beeline to court. *Lewis* is about collective-action waivers, not compulsory arbitration. There, the parties' arbitration clause combined "two distinct rules,"— first, a requirement that disputes had to be submitted to arbitration (a "proceed in arbitration" rule), and, second, "no matter where the claim is brought, the plaintiff may not take advantage of any collective procedure available in the tribunal" (a "no collective action" rule). 823 F.3d at 1155-56. It was the *second rule*—no collective action—that "[ran] straight into the teeth of Section 7 [of the NLRA]." *Id.* at 1155.

13

Far from finding that compulsory arbitration violated the NLRA, the Seventh Circuit suggested that had the arbitration provision "permitted collective arbitration, it would *not* have run afoul of Section 7." *Id.* at 1158 (emphasis added). The reason the arbitration clause as a whole was unenforceable had nothing to do with the NLRA and everything to do with the severability clause in the parties' agreement. *Id.* at 1156. The clause stated that "if the collective-action waiver is unenforceable, then any collective claim must proceed in court, not arbitration." *Id.* In other words, *by agreement*, the fate of the arbitration clause was tied to the fate of the collective-action waiver.

Not so here. Like the contract in *Lewis*, the arbitration clause in the Agreement has two rules: a no-collective-action rule and a proceed-in-arbitration rule. But unlike the contract in *Lewis*, the Agreement has a savings clause that expressly *unties* the fate of one clause from the fate of another.[11] Even if a wholesale application of *Lewis* invalidated the no-collective-action rule, the savings clause may preserve the rest of the arbitration clause.[12] The logic of *Lewis* may then

---

[11]The Agreement's savings clause reads:

Savings Clause. The invalidity of any one or more of the words, phrases, sentences, clauses, sections, or subsections contained in this Agreement shall not affect the enforceability of the remaining portions of this Agreement, all of which are inserted conditionally on their being valid in law. In the event that any one or more of the words, phrases, sentences, clauses, sections or subsections contained in this Agreement shall be declared invalid, this Agreement shall be construed as if such invalid word or words, phrase or phrases, sentence or sentences, clause or clauses, section or sections, or subsection or subsections had not been inserted.

Def.'s Mot. to Dismiss, Exh. A, Agreement ¶ 9.5

[12]As an illustration, the relevant portion of the arbitration clause could then read (with the no-collective-action rule struck out):

14

require an interpretive debate about whether the surviving arbitration clause would permit collective arbitration. The delegation clause commits that debate to arbitration. *See Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 133 S. Ct. 2064, 2071 (2013) (noting that where parties agreed that an arbitrator would "determine what their contract meant," it was the task of the arbitrator to determine whether the parties agreed to class arbitration). The exact impact of *Lewis* on the Agreement—and what exactly the savings clause would save—is for another day and, perhaps, another forum. For now, the point is that *Lewis* does not support the Plaintiffs' blunderbuss approach to arbitration clauses. *See, e.g.,* Pls.' Resp. Br. at 1, 6-7.

---

> Arbitration. The parties herein agree that any claim, dispute or controversy arising out of, effecting, interpreting or purporting to enforce this Agreement, or any matter in which the breach of this Agreement is alleged, or the enforcement of any legal or equitable right that allegedly arising out of or because of this Agreement, shall be resolved ~~on an individual basis and not as part of any class action exclusively between Contractor and Company~~ by submitting the dispute to binding and final arbitration to be conducted in Dallas County, Texas pursuant to the Commercial Arbitration rules and procedure as set forth under American Arbitration Association … .

And the venue clause:

> Choice of Law and Venue. This Agreement shall be governed, construed, and interpreted by the laws of the State of Texas. Venue for any dispute between the parties shall be in arbitration in Dallas County, Texas. THE PARTIES EXPRESSLY AGREE THEY HAVE, BY EXECUTING THIS AGREEMENT, WAIVED THEIR RIGHTS TO FILE SUIT OR SEEK RELIEF IN ANY STATE COURT, FEDERAL COURT, OR COURT OF A FOREIGN NATION ~~AND SHALL NOT JOIN AS A PLAINTIFF IN ANY CLASS ACTION, OR SIMULAR PROCEDURE, ARISING FROM, OR RELATING TO, THIS AGREEMENT~~.

*See* Def.'s Mot. to Dismiss, Exh. A, Agreement ¶¶ 9.3, 9.4.

### C. Scope of the Arbitration Clause

The Plaintiffs also argue that their statutory wage claims fall outside the scope of the arbitration clause because the claims are statutory, not contractual. Pls.' Resp. Br. at 8-9. That is a textbook argument about the scope of an arbitration clause. Again, the Agreement's incorporation of the AAA Rules commits its resolution to arbitration. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010).

### III. Conclusion

The parties' arbitration agreement incorporates by reference a broad delegation clause, via the AAA Rules, which commits issues of arbitrability to arbitration. As bootstrapped as it may be, arbitration is the correct forum to decide whether the Plaintiffs' employment status and statutory wage claims must be arbitrated. Because the Agreement directs arbitration outside this District, dismissal for lack of venue under Rule 12(b)(3) is appropriate. Vehi-Ship's motion to dismiss is granted.

ENTERED:

       s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: November 27, 2017